UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| TPI HOLDINGS, INC.,<br>AUTOTRADER.COM, INC. , AND<br>DOMINION ENTERPRISES<br><br>Plaintiffs,<br><br>v.<br><br>CLASSIC TRADER, GMBH<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: |

**COMPLAINT**

Plaintiffs TPI Holdings, Inc., Autotrader.com, Inc, and Dominion Enterprises (collectively "TPI" or Plaintiffs) state the following for their Complaint against Defendant Classic Trader, GmbH ("Defendant"):

## **<u>Nature of the Action</u>**

1. This is an action at law and in equity for trademark infringement, cybersquatting, and unfair competition arising under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and state statutory and common law, arising out of the Defendant's use of the trademark CLASSIC TRADER which is confusingly

similar to, and trades on the goodwill of, Plaintiffs' long-established and well-known TRADER marks.

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 15 U.S.C. §§ 1331 and 1338.

3. This Court has personal jurisdiction over Defendant because, through its infringing interactive website, marketing, and communications and transactions with residents of this district, Defendant is transacting business within this district, has engaged in acts or omissions within this district that have caused injury, has caused injury within this district, or has otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction. This Court also has personal jurisdiction over Defendant because its aggregate contacts with the United States and activities targeted to the United States as a whole continuously over the course of approximately two years render it subject to such jurisdiction, consistent with the United States Constitution.

4. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim have occurred and are occurring in this district.

**Parties**

5. Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. TPI is the owner of the trademarks and trademark registrations at issue in this suit.

6. Plaintiff Autotrader.com, Inc. ("Autotrader.com") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. Autotrader.com is the exclusive licensee of, and offers services under, certain of the TRADER Marks.

7. Plaintiff Dominion Enterprises ("Dominion") is a partnership organized under the laws of Virginia, with its principal place of business located in Norfolk, Virginia. Dominion is the exclusive licensee of, and offers services under, certain of the TRADER Marks.

8. TPI, Autotrader.com, Dominion, and their predecessors, licensees, and affiliates are collectively hereinafter referred to as "TPI" or "Plaintiffs."

9. Defendant Classic Trader GmbH is a limited liability company with a principal place of business in Berlin, Federal Republic of Germany. Defendant Classic Trader GmbH is the registrant of the domain names at issue in this case, and

operates a website throughout the United States and elsewhere using the domain names and mark at issue in the case.

## **FACTUAL BACKGROUND**

### **TPI's Trademark and Service Mark Rights**

10. For more than forty years, TPI has adopted and used in this District and throughout the United States a family of trademarks that combine the term "TRADER" with numerous terms or phrases that refer to vehicles, including the marks AUTOTRADER, AUTOTRADER.COM, AUTOTRADER GROUP, BOAT TRADER, COMMERCIAL TRUCK TRADER, CYCLE TRADER, EQUIPMENT TRADER, and RV TRADER, among multiple others. TPI has also adopted and used a number of TRADER-formative marks that combine TRADER with terms suggestive of classified advertising, such as TRADER ONLINE, and EQUIPMENT TRADERONLINE.COM. Collectively, these marks are hereinafter referenced as the "TRADER Marks" or "TRADER Family of Marks."

11. From the beginning, TPI used the TRADER Marks in connection with a number of different print publications offering classified advertising distributed throughout the United States. Since 1996, TPI has offered classified advertising online in connection with the TRADER Marks.

12. TPI is the owner of multiple federal registrations for its TRADER Marks, including the following:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| AERO TRADERONLINE.COM | 2873918 | 08/17/2004 |
| ATV TRADER | 4522609 | 04/29/2014 |
| AUTO TRADER | 2390815 | 10/03/2000 |
| AUTOTRADER.COM | 2381590 | 08/29/2000 |
| AUTOTRADER CLASSICS | 3667547 | 08/11/2009 |
| AUTOTRADER CLASSICS | 3667541 | 08/11/2009 |
| AUTOTRADER CLASSICS.COM | 3768247 | 03/30/2010 |
| AUTOTRADER GROUP | 4541925 | 06/03/2014 |
| BID TRADER | 4655085 | 12/16/2014 |
| BOAT TRADER | 2389118 | 09/26/2000 |
| COMMERCIAL TRUCK TRADER | 3605107 | 04/14/2009 |
| CYCLE TRADER | 2294240 | 11/23/1999 |
| EQUIPMENT TRADER | 3605275 | 04/14/2009 |
| EQUIPMENT TRADERONLINE.COM | 2873928 | 08/17/2004 |
| PWC TRADER | 4522610 | 04/29/2014 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |
| SNOWMOBILE TRADER | 4522611 | 04/29/2014 |
| TRADER ONLINE | 2302312 | 12/21/1999 |
| TRADERONLINE.COM | 3161680 | 10/24/2006 |
| YACHT TRADER | 2349954 | 05/16/2000 |

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as Collective Exhibit A. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of the validity of the marks and TPI's exclusive right

to use the marks in connection with the goods and services specified in the registrations.

13. Since the adoption of each of the TRADER Marks, TPI has made widespread and continuous use of each of them, and has promoted them together, in connection with services offered to the public throughout the United States.

14. Specifically, through its predecessors in interest, TPI began using its first TRADER mark, the AUTO TRADER mark, at least as early as 1974 to provide classified advertising respecting automotive vehicles. In the following years, through its predecessors in interest, TPI expanded use of TRADER formative marks into multiple publications offering classified advertising with respect to a wide variety of vehicles, as well as other goods. For example, TPI began using the BOAT TRADER mark at least as early as 1976 to provide classified advertising respecting boats and the CYCLE TRADER and AERO TRADER marks at least as early as 1978 to provide classified advertising respecting motorcycles and airplanes respectively. It added the RV TRADER mark in 1989 to provide classified advertising respecting RV's; the YACHT TRADER mark in 1990 to provide classified advertising respecting yachts and luxury boats; and the COLLECTOR CAR TRADER and OLD CAR TRADER marks in 1991 and 1995 respectively to provide classified advertising respecting niche market automotive vehicles. True

and correct copies of representative front covers of multiple magazines distributed under TPI's TRADER Marks are attached as Collective Exhibit B.

15. Beginning in at least 1996, TPI extended use of numerous of its TRADER Marks, including the AUTO TRADER, CYCLE TRADER, BOAT TRADER, RV TRADER, and AERO TRADER marks, to provide advertising and merchandising classifieds respecting the various goods and services that the publications featured via an online electronic communications network.

16. For example, since 1996, TPI has featured its offerings under the AUTO TRADER mark at a website accessible under the autotrader.com domain name. In addition, since 1996, TPI has featured its offerings under the CYCLE TRADER mark at its website at cycletrader.com and cycletraderonline.com, its offerings under the BOAT TRADER mark at its boattrader.com and boattraderonline.com websites, under the RV TRADER mark at its website at rvtraderonline.com, and rvtrader.com and under the AERO TRADER mark at its website at aerotrader.com and aerotraderonline.com. In 1996, TPI also began using its TRADER ONLINE mark at traderonline.com, where, over the years, it has promoted offerings under its TRADER Family of Marks. Moreover, in 2008, TPI also began using the mark AUTOTRADER CLASSICS in connection with classified advertising specifically for classic, collector, and vintage automotive vehicles. True

and correct print-outs of representative homepages reached through various TRADER domain names and/or featuring TRADER Marks are attached as Collective Exhibit C.

17. TPI has invested more than forty years of continuous and substantial corporate efforts and hundreds of millions of dollars to strengthen and promote the reliability of goods and services provided under, and identified by, each of its TRADER Marks and its TRADER Family of Marks. Over decades, TPI distributed hundreds of millions of TRADER magazines through tens of thousands of outlets, and over the past twenty years, online sites operated under and featuring the TRADER marks have carried millions of ads and attracted hundreds of millions of visitors annually.

18. As a result of TPI's substantial and continuous use and marketing of its TRADER Marks, and of its websites and services offered in connection with them, the marks have become extremely well known to the United States public as exclusive source identifiers of TPI's high quality reliable services, and the public has come to expect websites offering and publishing classified advertising in connection with TRADER formative marks to be associated with TPI and the TRADER Family of Marks.

**Defendant's Wrongful Acts**

19. Long after TPI's marks had become well known as source identifiers for TPI's advertising services, in an attempt to trade on TPI's good will, in approximately 2015, Defendant Classic Trader began using the mark CLASSIC TRADER (the "Infringing Mark") and the domain names classictrader.com and classic-trader.com (the "Infringing Domain Names") in the United States, and applied to the United States Patent and Trademark Office to register the CLASSIC TRADER Mark. True and correct copies of the database records showing Defendant as registrant of the Infringing Domain Names are attached as Exhibit D, and a true and correct copy of the PTO record showing Defendant's application to register the Infringing Mark is attached as Exhibit E.

20. Defendant has used the CLASSIC TRADER mark and Infringing Domain Names to operate a website (the "Infringing Site") that publishes classified advertising, enabling third parties to advertise their automobiles and motorcycles for sale on Defendant's site, in direct competition with TPI's autotrader.com and cycletrader.com sites. As shown in representative pages from the Infringing Site attached hereto as Exhibit F, the site prominently displays the Infringing Mark.

21. Before Defendant began using the Infringing Domain Names and Mark in the United States, Defendant had actual knowledge of TPI's TRADER Marks

because of TPI's longstanding and extensive use of them. As a matter of law, Defendant is also charged with constructive knowledge of TPI's rights because of TPI's multiple United States trademark registrations. In addition, since at least October 21, 2015, Defendant has had actual knowledge of TPI's rights and trademark registrations. On that date, TPI filed in the United States Patent and Trademark Office Trademark Trial and Appeal Board and caused to be served on Defendant its Notice of Opposition to Defendant's application to register CLASSIC TRADER as a mark, on grounds that Defendant's mark was likely to cause confusion with Plaintiff's family of TRADER Marks. A true and correct copy of the Notice of Opposition ("TPI's Opposition") is attached as Exhibit G.

22. Defendant did not deny or otherwise respond to TPI's Opposition to its trademark application. On March 10, 2016, the Trademark Trial and Appeal Board issued a final order in favor of TPI, sustaining TPI's opposition to Defendant's application. The Order is effective as a determination on the merits that Defendant's CLASSIC TRADER mark is likely to be confused with TPI's TRADER Marks. A true and correct copy of the Trademark Trial and Appeal Board Order is attached as Exhibit H.

23. Defendant's mark is confusingly similar to Plaintiffs' family of marks and each of them because TRADER is a salient component of it, and Defendant has

coupled a term frequently used to describe certain vehicles, *i.e.* "classic," with TRADER to create a commercial impression similar to those created by TPI's TRADER Family of Marks and each of the TRADER Marks. The Infringing Mark is also particularly likely to cause confusion with TPI's AUTOTRADER CLASSICS mark because it consists of both the TRADER and CLASSIC components of that mark.

24. Defendant is using its mark in connection with services that are identical to the Plaintiffs' advertising services, *i.e.* classified advertising regarding cars and motorcycles, and providing the services through the identical channel of trade that Plaintiffs use to provide their services, *i.e.*, the Internet. Indeed, the advertising service offered by Defendant respecting classic and vintage automotive vehicles directly competes with the services offered under TPI's AUTOTRADER CLASSICS mark, and its service respecting vintage and classic motorcycles directly competes with certain services offered under TPI's CYCLETRADER mark. Defendant also touts on its website that it offers information regarding airplanes, boats, and tractors, *i.e.* other products for which TPI offers information and classified advertising services under TRADER Marks.

25. Defendant is using the Infringing Site to divert internet users seeking Plaintiffs' services to Defendant's site. Defendant has used its site in the United

States intentionally to seek to cause confusion and trade on TPI's goodwill in its TRADER family of marks in order to reap undeserved profits.

26. Defendant's use of domain names and a mark that are confusingly similar to TPI's TRADER Marks deceives the public, causes irreparable harm and damage to TPI, and unlawfully generates income for Defendant.

27. Despite knowing of TPI's rights, Defendant has continued using and expanded use of the Infringing Mark and Domain Names in the United States. Its site currently displays hundreds of advertisements posted and paid for by residents of the United States for cars and motorcycles located in the United States, as shown in Exhibit I.

28. Defendant therefore is intentionally infringing on TPI's rights.

29. Defendant is also specifically targeting consumers in this District with its infringement through its interactive website. This targeting is illustrated by the fact that there are dozens of ads published by Defendant on Defendant's site for cars and motorcycles located in this District, as shown in Exhibit J. Moreover, Defendant's site is not merely a passive site for viewing. Rather, Defendant sells its services and delivers its services through its website, and Defendant seeks affirmatively to interact with website users and customers in this District. Persons who wish to use the Defendant's site to search for cars or motorcycles for sale and

who wish to access the full content of the site, including full seller contact information or information about various vehicles posted for sale, must register with the site and activate an account through a multi-step process. Defendant sends emails and newsletters to persons who register with the site. Persons who purchase Defendant's ad publishing service also do so through the website, and those persons wishing to post an ad submit to Defendant through its website additional information beyond the original registration, pay the Defendant through the website for each ad posting, and upload to the Defendant's site each ad's proposed content. Defendant then vets proposed ad content and emails the customer about it.

30. Thus, Defendant is specifically selling its services under the Infringing Mark and Domain Names in this District and has customers located in this District. It is transacting business with persons located in this District by entering advertising contracts with District residents, for numerous ads, receiving substantial revenue from residents of the District for the publishing of such ads, and sending emails to residents of this District about their ads. Furthermore, Defendant is seeking to attract consumers located in this District to its website by publishing ads for vehicles located in this District, and therefore conveniently located to District residents interested in purchasing classic vehicles.

**COUNT I**
**FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT**

31. TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

32. Defendant has used and promoted the Infringing Domain Names and Mark in connection with the sale of its services. Defendant's unauthorized use of these confusingly similar imitations of TPI's registered TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's imitation TRADER business and services are affiliated, connected, or associated with TPI or have the sponsorship, endorsement, or approval of TPI, all in violation of 15 U.S.C. § 1114.

33. Defendant's unauthorized use of confusingly similar imitations of TPI's registered TRADER Marks, notwithstanding its knowledge of TPI's ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of TPI's TRADER Marks and to cause confusion, deception, and mistake in the minds of TPI's customers and potential customers to the great and irreparable injury of TPI. Defendant has acted knowingly and has been unjustly enriched thereby.

34. Because Defendant's conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover Defendant's trebled profits associated with the infringement, TPI's costs, and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

35. TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

36. By registering and using the Infringing Domain Names, Defendant has registered, trafficked in, and used domain names that are confusingly similar to TPI's TRADER Marks. Defendant registered and has used the Infringing Domain Names with the bad faith intent of profiting unlawfully from TPI's TRADER Marks.

37. Defendant registered and is using the Infringing Domain Names with the intent to divert consumers from TPI's online locations to their website accessible through the Infringing Domain Names and with the bad faith intent to profit from Plaintiffs' marks by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the sites.

38. Defendant is operating its site with the intent to profit from the use of the Infringing Domain Names and the consequent confusion of internet users.

39. Defendant's actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

40. The unauthorized registration and use of the Infringing Domain Names have caused and unless enjoined, Defendant's registration and continued use of the Infringing Domain Names will continue to cause, irreparable injury to TPI and to the goodwill associated with TPI's TRADER Marks.

41. Because Defendant's infringing conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Defendant's trebled profits, together with TPI's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT III
## FEDERAL UNFAIR COMPETITION

42. TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

43. Defendant's use of confusingly similar imitations of TPI's TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's business is affiliated,

connected, or associated with TPI or has the sponsorship, endorsement, or approval of TPI, in violation of 15 U.S.C. § 1125(a).

44. Defendant's actions demonstrate an intentional, willful, and bad faith intent to trade on TPI's goodwill and to cause confusion, deception, and mistake in the minds of TPI's customers and potential customers by implying a nonexistent affiliation or relationship between Defendant and TPI to the great and irreparable injury of TPI.

45. Because Defendant's unfair competition is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover Defendant's trebled profits associated with the infringement, TPI's costs, and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT IV
## DECEPTIVE TRADE PRACTICES UNDER O.C.G.A. § 10-1-370 *et seq.*

46. TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

47. Defendants' acts constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-372 (a) (2007).

48. Defendants' infringement has been willful and in bad faith, making this an exceptional case under O.C.G.A. § 10-1-373 (b)(2) (2007).

**COUNT V**
**COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION**

49. TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

50. Defendant has used confusingly similar imitations of TPI's TRADER Marks with full knowledge of TPI's rights to the marks and with the willful and calculated purpose of trading upon TPI's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by TPI, for the purpose of misleading and deceiving the public.

51. Defendant has used confusingly similar imitations of TPI's electronic URL addresses, with full knowledge of TPI's rights, and with the willful and calculated purpose of trading upon TPI's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by TPI, for the purpose of misleading and deceiving the public.

52. Defendant's conduct constitutes infringement of TPI's common law rights to the TRADER Marks and has damaged and will continue to damage irreparably TPI's goodwill and reputation unless enjoined by this Court.

53. Independent of its liability for common law infringement, Defendant also engaged in unfair competition under the common law of Georgia and the other

states in which it has engaged in its activities through its reliance on consumer mistakes and confusion, and its deliberate efforts to poach upon TPI's goodwill.

**PRAYER FOR RELIEF**

WHEREFORE, TPI prays:

1. That Defendant, its partners, agents, employees, and all persons in active concert or participation with Defendant, be permanently enjoined and restrained from:

   a) using in the United States the Infringing Domain Names and Infringing Mark and any trademark, company name, or domain name that is confusingly similar to TPI's TRADER Marks;

   b) engaging in any other conduct in the United States which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's online businesses or services with or by TPI;

   c) otherwise infringing upon TPI's TRADER Marks or unfairly competing with TPI in any manner whatsoever; and

2. That Defendant be ordered to transfer and assign to TPI or its designee the Infringing Domain Names.

3. That an accounting be ordered and judgment be rendered against Defendant for all profits received from the sale or provision of products or services directly or indirectly in connection with, or advertised or promoted in any manner, utilizing the Infringing Domain Names and confusingly similar imitations of TPI's TRADER Marks.

4. That the award of profits resulting from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

5. That TPI recover its actual damages.

6. That the award of actual damages from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

7. That TPI recover statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000.00 per Infringing Domain Name.

8. That Defendant be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any and all other printed or graphic materials of any type, including the software, plates, molds, or other means of

producing the materials, which bear references to confusingly similar imitations of TPI's TRADER Marks, or to the Infringing Domain Names.

9. That Defendant be directed to file with the Court and serve on TPI, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant have complied with the injunction.

10. That TPI be awarded its costs in connection with this suit, including reasonable attorneys' fees and expenses.

11. That TPI have such other and further relief as the Court may deem just and proper.

Submitted this 6th day of February, 2017.

/s/ Judith A. Powell
Judith A. Powell
Georgia Bar No. 586125
Jennifer Fairbairn Deal
Georgia Bar No. 940527
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Attorneys for Plaintiffs

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

/s/ Judith A. Powell
Judith A. Powell